J-A08038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PRECISION KIDD ACQUISITION, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH J. PASS, IN HIS CAPACITY | : | No. 888 WDA 2021 |
| AS REPRESENTATIVE OF THE | : | |
| SHAREHOLDERS AS PROVIDED IN | : | |
| THE AGREEMENT AND PLAN OF | : | |
| MERGER DATED AS OF JANUARY 5, | : | |
| 2015, BY AND AMONG PRECISION | : | |
| KIDD ACQUISITION, LLC, PRECISION | : | |
| KIDD MERGER SUB, INC., | : | |
| PRECISION KIDD STEEL CO. INC., | : | |
| AND JOSEPH J. PASS, SOLELY IN HIS | : | |
| CAPACITY AS REPRESENTATIVE OF | : | |
| THE SHAREHOLDERS AS PROVIDED | : | |
| IN SAID AGREEMENT | : | |

Appeal from the Judgment Entered October 1, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-16-018687

BEFORE: BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: May 13, 2022**

Appellant, Precision Kidd Acquisition, LLC ("PKA"), appeals from the

October 1, 2021 judgment entered against Appellee, Joseph J. Pass, in his

capacity as representative of the shareholders as provided in the agreement

and plan of merger dated as of January 5, 2015, by and among Precision Kidd

Acquisition, LLC, Precision Kidd Merger Sub, Inc., Precision Kidd Steel Co. Inc.,

and Joseph J. Pass, solely in his capacity as representative of the shareholders as provided in said agreement. We affirm.

The trial court summarized the background of this case as follows:

PKA filed an action for breach of contract and contractual indemnification regarding the merger of its wholly-owned subsidiary with Precision Kidd Steel Co., Inc.[ (referred to herein as "Company")]. [Appellee] is the representative of the shareholders of that former [C]ompany. PKA alleged that [the Company] failed to disclose prior to the merger that Snap-on Incorporated ("Snap-on"), one of the … [C]ompany's largest customers, had in fact terminated its contract in the prior year, arguably making the [C]ompany less profitable and therefore less valuable. PKA sought indemnification for damages pursuant to the terms of the Merger Agreement.

Following a non-jury trial lasting several days, as well as extensive post-trial filings and argument by the parties, this court entered an Opinion and Non-Jury Verdict[,] dated September 27, 2018, finding a breach of the Merger Agreement and awarding PKA $36,000 in damages. PKA timely filed a motion for post-trial relief[,] which was granted in part and denied in part on June 17, 2019. [The trial court] added attorneys' fees to the verdict and awarded $384,309.42 in attorneys' fees. The balance of the post-trial [m]otion was denied.

Thereafter, both sides appealed. The Superior Court filed an opinion on October 1, 2020[,] affirming our decision but remanding for a determination as to whether a $50,000 offset applied….

On remand, we again found that the offset did apply….

Rule 1925(a) Opinion ("RO"), 11/4/21, at 1-3.

On June 28, 2021, the trial court entered an order determining that Appellee was entitled to a $50,000 offset, thereby reducing PKA's award by that amount. Therein, the trial court also awarded PKA additional attorneys' fees in the amount of $14,913, for the work relating to its post-trial motion,

which resulted in the award of attorneys' fees for the successful verdict. However, the trial court declined to award PKA appellate attorneys' fees or attorneys' fees for the work performed on remand from this Court.

On July 23, 2021, PKA filed a notice of appeal, purporting to appeal from the trial court's June 28, 2021 order. On August 6, 2021, the trial court directed PKA to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and PKA timely complied. On August 17, 2021, PKA filed a *praecipe* for entry of judgment. On September 7, 2021, Appellee filed a motion to strike the judgment, as he asserted that PKA's August 17, 2021 *praecipe* for entry of judgment had incorrectly identified Appellee. On September 10, 2021, the trial court granted Appellee's motion and struck the judgment. At this Court's direction, PKA filed a corrected *praecipe* for entry of judgment in the amount of $385,222.42, plus interest, on October 1, 2021. Thus, we consider PKA's notice of appeal as taken from the October 1, 2021 judgment. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); **see also Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (stating that an appeal lies from judgments entered subsequent to the trial court's disposition of any post-verdict motions).[1]

On appeal, PKA raises the following questions for our review:

_____

[1] The Prothonotary of this Court has already amended the caption to reflect that PKA is appealing from the October 1, 2021 judgment.

- 3 -

1. Did the [t]rial [c]ourt err in its determination that the $50,000 [offset] applied to damages resulting from the breach of Section 5.05(a) of the [Merger Agreement]?

2. Did the [t]rial [c]ourt err in failing to find that attorneys' fees and costs are included in the definition of "Losses" under the [Merger Agreement], and thus contractually recoverable as "the cost of enforcing any right to indemnification hereunder"?

3. Did the [t]rial [c]ourt err by finding that PKA was not successful in its appeal and thus not entitled to recover all attorneys' fees incurred in seeking indemnity, rather than looking to the overall success of PKA's claim against the selling shareholders?

PKA's Brief at 4-5.

## Issue 1

In PKA's first issue, it claims that the trial court erred in determining that the $50,000 offset set forth in the Merger Agreement applied to reduce its award. *See id.* at 4. This issue raises a question of contract interpretation, which triggers a *de novo* standard of review and a plenary scope of review. *See Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 98 A.3d 645, 653 (Pa. Super. 2014) (*en banc*) (citations omitted).[2] Further, Delaware's Supreme Court has explained:

Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party. When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions. Contract terms themselves will be controlling when they establish

_____

[2] Although Delaware substantive law applies to this matter, *see, e.g.*, RO at 5, PKA asserts that Pennsylvania law governs questions of procedure, including standards and scopes of review. *See* PKA's Brief at 2-4. Appellee does not dispute this contention in his brief. Therefore, we apply our standard and scope of review.

- 4 -

the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language. Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract.

*Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (internal quotation marks and footnotes omitted).[3]

To begin, by way of background, the trial court found that Appellee breached Sections 3.08, 3.15(a), and 5.05(a) of the Merger Agreement. Section 3.08 — which falls under Article III, entitled 'Representations and Warranties of the Company' — provides, in relevant part:

Section 3.08 **Absence of Certain Changes, Events and Conditions.** Except as set forth on **Section 3.08** of the Disclosure Schedule, since the Balance Sheet Date, and other than in the ordinary course of business consistent with past practice, there has not been, with respect to the Company, any:

(a) event, occurrence or development that has had, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect;

---

[3] PKA cites to Pennsylvania case law addressing how to interpret a contract. **See** PKA's Brief at 29-31. However, given that Delaware substantive law applies, **see** footnote 2, **supra**, we believe we should look to Delaware case law pertaining to contract interpretation. **See Ferraro v. McCarthy-Pascuzzo**, 777 A.2d 1128, 1137 (Pa. Super. 2001) (explaining that "[s]ubstantive law is the portion of the law which creates the rights and duties of the parties to a judicial proceeding, whereas procedural law is the set of rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced. Whenever Pennsylvania is the chosen forum state for a civil action, our state's procedural rules[,] *i.e.*[,] the Pennsylvania Rules of Civil Procedure[,] govern, no matter what substantive law our courts must apply in resolving the underlying legal issues") (citations omitted). Nevertheless, even if we were to apply Pennsylvania law regarding contract interpretation, our analysis would not be altered and we would reach the same result.

\*\*\*

(n) acceleration, termination, material modification to or cancellation of any material Contract (including, but not limited to, any Material Contract) to which the Company is bound;

Joint Exhibit 25 ("Merger Agreement") at 27-28 (emphasis in original).

Section 3.15(a) — which likewise appears under Article III, entitled 'Representations and Warranties of the Company' — sets forth:

Section 3.15 **Customers and Suppliers.**

(a) **Section 3.15(a)** of the Disclosure Schedules sets forth (i) each customer who has paid aggregate consideration to the Company for goods or services rendered in an amount greater than or equal to $250,000 for each of the two (2) most recent fiscal years (collectively, the "**Material Customers**"); and (ii) the amount of consideration paid by each Material Customer during such periods. The Company has not received any written notice or, to the Company's Knowledge an oral indication, that any of its Material Customers has ceased, or intends to cease after the Closing, to use its goods or services or to otherwise terminate or materially reduce its relationship with the Company.

*Id.* at 33 (emphasis in original).

Finally, Section 5.05(a)(i) — which falls under Article V of the Merger Agreement, entitled 'Covenants' — states, in pertinent part:

Section 5.05 **Notice of Certain Events.**

(a) From the date hereof until the Closing, the Company shall promptly notify [PKA] in writing of:

(i) any fact, circumstance, event or action the existence, occurrence or taking of which (A) has had, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, (B) has resulted in, or could reasonably be expected to result in, any representation or warranty made by the Company hereunder not being true and correct or (C) has resulted in, or could reasonably be expected to result in, the failure of

any of the conditions set forth in **Section 7.02** to be satisfied;

*Id.* at 46 (emphasis in original).

The $50,000 offset at issue is contained in Article VIII of the Merger Agreement, which addresses indemnification for breaches. Pertinent to the matter at hand, Section 8.02 provides for indemnification by the Company's shareholders for breaches. It conveys, in relevant part:

> Section 8.02 **Indemnification by Shareholders.** Subject to the other terms and conditions of this Article VIII, the Shareholders, severally and not jointly (in accordance with their Pro Rata Shares), shall indemnify and defend [PKA] and its Affiliates (including the Surviving Corporation) and their respective Representatives (collectively, the "**Parent Indemnitees**") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Parent Indemnitees based upon, arising out of, with respect to or by reason of:
>
> > (a) any inaccuracy or breach of any of the representations or warranties of the Company contained in this Agreement…;
> >
> > (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by the Company pursuant to this Agreement;

*Id.* at 55 (emphasis in original). The Merger Agreement defines 'Losses' as

> losses, damages, liabilities, deficiencies, Actions, judgments, interest, awards, penalties, fines, costs or expenses or whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification hereunder and the cost of pursuing any insurance providers….

*Id.* at 9.

The indemnification for losses provided for in Section 8.02 is, in turn, limited by Section 8.04, which includes the $50,000 offset at issue. In relevant part, Section 8.04 states:

> Section 8.04 **Certain Limitations.** The indemnification provided for in **Section 8.02** … shall be subject to the following limitations:
>
> (a)(i) Shareholders shall not be liable to the Parent Indemnitees for indemnification under **Section 8.02(a)** until the aggregate amount of all Losses in respect of indemnification under **Section 8.02(a)** exceeds $100,000 (the "**Basket**"), in which event the Shareholders shall be required to pay or be liable for all such Losses in excess of $50,000….
>
> ***
>
> (c) Notwithstanding **Section 8.04(a)**…, (i) the limitations set forth in **Section 8.04(a)(i)** … shall not apply to Losses based upon, arising out of, with respect to or by reason of any inaccuracy in or breach of any representation or warranty in the Fundamental Representations and the Excluded Representations….

*Id.* at 56 (emphasis in original). As such, subject to 8.04(c), Section 8.04(a)(i) imposes the $50,000 offset to losses arising out of "any inaccuracy or breach of any of the representations or warranties of the Company contained in this Agreement" (*i.e.*, losses under Section 8.02(a)), but not to losses stemming from "any breach or non-fulfillment of any covenant, agreement or obligation to be performed by the Company pursuant to this Agreement" (*i.e.*, losses under Section 8.02(b)). ***See id.*** at 55-56 (setting forth Sections 8.02 and 8.04(a), (c)).

Based on the foregoing contractual provisions, the trial court determined that the $50,000 offset applied to reduce PKA's award. It explained, *inter alia*,

that two of the three breaches it found — namely, the breaches of Section 3.08 and 3.15(a) — appear within Article III, entitled 'Representations and Warranties of the Company.' **See** Trial Court Opinion ("TCO"), 6/28/21, at 5. It acknowledged that the third breach — the breach of Section 5.05(a) — appears under Article V, entitled 'Covenants,' but noted that Section 5.05(a) "is closely linked to representations and warranties, and in fact uses those very terms at [Section] 5.05(a)(i)(B)." **Id.** at 6. In addition, the trial court discerned that none of the breaches it found constitute a breach of any representation or warranty in the Fundamental Representations and the Excluded Representations, such that Appellee would be prohibited from taking the $50,000 offset under Section 8.04(c). **Id.** at 5-6. Thus, the trial court ultimately concluded that the selling shareholders committed an 'inaccuracy in or breach of the representations and warranties of the Company' under Section 8.02(a), and that the $50,000 offset in Section 8.04(a)(i) applies to losses incurred pursuant to Section 8.02(a). **Id.** at 6-7. In reaching this decision, the trial court also observed that both parties participated jointly in the negotiation and drafting of the Merger Agreement, and that they agree that "the harm itself is indivisible and the damages awarded cannot be apportioned between the three breaches." **Id.** at 6.[4]

---

[4] Because both parties participated jointly in drafting the Merger Agreement, we cannot construe ambiguities in the Merger Agreement, to the extent any even exist, against the drafting party. **See Osborn ex rel. Osborn v. Kemp**, 991 A.2d 1153, 1160 (Del. 2010) ("If a contract is ambiguous, we will apply

On appeal, PKA asserts that the trial court "misconstrued the interplay of Sections 8.02(a), 8.02(b), 8.04[,] and Article V of the Merger Agreement." PKA's Brief at 20 (emphasis and unnecessary capitalization omitted).[5] PKA says that, "[b]ecause the [t]rial [c]ourt expressly found that the shareholders breached an affirmative covenant under Article V of the Merger Agreement, the $50,000 [offset] cannot apply as a matter of law." *Id.* at 25 (emphasis omitted). It elaborates:

> The distinction between Sections 8.02(a) an[d] 8.02(b) is important because the [t]rial [c]ourt expressly found breaches of three provisions of the Merger Agreement: Sections 3.08, Section

_____

the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party.") (footnote omitted); **see also** Merger Agreement at 66 ("The parties hereto and their respective counsel have participated jointly in the negotiation and drafting of this Agreement. No party hereto, nor its counsel, shall be deemed the drafter of this Agreement for purposes of construing the provisions of this Agreement, and no provision of this Agreement shall be construed strictly for or against any party by virtue of the authorship of any of this [*sic*] provisions of this Agreement.").

[5] To the extent PKA claims that Appellee has waived the issue of whether the $50,000 offset applies, we disagree. PKA suggests that Appellee has waived this issue because Appellee "filed no post-trial motion of [his] own, even though the question of whether the [offset] applied was ripe the moment the [t]rial [c]ourt issued an award to PKA." PKA's Brief at 21 n.3. Instead of filing his own post-trial motion, PKA says that Appellee first raised the applicability of the offset in his second brief opposing PKA's post-trial motion. **See id.** at 21-22. However, Appellee explains that, "until an award of attorney[s'] fees was allowed, the application of the [Section] 8.04 [offset] was not an issue[,]" and insists that he appropriately raised the issue of the offset in response to PKA's contention that it was entitled to recover attorneys' fees. Appellee's Brief at 3; **see also id.** (noting that the original verdict was only in the amount of $36,000, and therefore, no indemnity obligation arose at that point as it did not exceed the $100,000 'basket' set forth in Section 8.04(a)(i)). Based on our review of the record, we agree with Appellee and find no waiver on this basis.

3.15(a), and Section 5.05(a). The first two of these breaches fall under Article III, entitled "Representations and Warranties of the Company[,"] and so, if no violation of a covenant had been found, the [s]elling [s]hareholders' indemnity obligation would be governed by Section 8.02(a), which in turn would be subject to the $50,000 [offset] set forth in [S]ection 8.04(a)(i).

But Section 5.05(a) is different. Article V of the [Merger] Agreement is entitled "Covenants[,"] and Section 5.05(a) contained an affirmative obligation of the Company and [s]elling [s]hareholders to promptly notify PKA of certain events (such as, for example, the loss of the [C]ompany's second largest customer) that could have had a "Materially Adverse Effect" on the Company. The [t]rial [c]ourt found that the [s]elling [s]hareholders had breached this covenant by not revealing to PKA that Snap-[o]n had sent notice of the termination of its long-standing contract with the Company. Therefore, the [s]elling [s]hareholders are required to indemnify PKA for that breach of … Section 5.05(a) as a covenant under **Section 8.02(b)**, which is not subject to the $50,000 [offset] found in Section 8.04(a)(i).

Inexplicably, the [t]rial [c]ourt held … that the Merger Agreement did not clearly differentiate between "representations and warranties" and "covenants[."] The [t]rial [c]ourt found that the Article V covenant breach was just another "representation or warranty" that had been breached. In so doing, the [t]rial [j]udge, [for] all intents and purposes, read the provisions of Article V and Section 5.05(a) out of the Merger Agreement. That this is a misreading of the Merger Agreement is shown by the comparison of the [t]rial [c]ourt's language as contrasted with the actual language of the Merger Agreement. For instance, the [t]rial [c]ourt stated that, although Article V is captioned "Covenants[,"] Section 5.05(a) "specifically refers to a 'representation or warranty made by the Company hereunder not being true and correct[.'"] And so it does, leading the [t]rial [c]ourt to equate a breach under Section 5.05(a) with a breach of representation. But that is not *all* that Section 5.05(a) does: it also requires the Company *affirmatively* to *notify* PKA of any "fact, circumstance, event or action" that could have an adverse effect on the Company, and that is what the [t]rial [c]ourt specifically found, in September[] 2018, that the Company and the [s]elling [s]hareholders did not do….

PKA's Brief at 26-28 (emphasis in original; internal citations omitted).

We reject PKA's argument that the offset does not apply because a breach of Section 5.05(a) occurred. As Appellee aptly points out, even if the selling shareholders had breached a covenant, the Merger Agreement "expressly and unequivocally provides that the [Section] 8.04 [offset] is properly applied to reduce an indemnification obligation arising under … Section 8.02(a). Nothing in the Merger Agreement limits the application of the [Section] 8.04 [offset] simply because an indemnification obligation may also arise under … Section 8.02(b)." Appellee's Brief at 6. Stated differently, there is nothing in the Merger Agreement to support PKA's argument that "even if a contract breach falls within the coverage of Section 8.02(a), any other contract breach that falls outside the coverage of Section 8.02(a) strips the limitation from the indemnity obligation." *Id.* at 11. Furthermore, we agree with Appellee that, if it had been the intent of the parties to curtail Section 8.04's offset where other breaches outside of Section 8.02(a) also occurred, the parties could have added language to the Merger Agreement to affect that result. *See id.* at 11-12. As Appellee notes,

> there are provisions in the Merger Agreement pursuant to which the parties did place restrictions on the operation of [Section] 8.04['s offset]. For example, the limitations set forth in Section 8.04(a) do not apply to indemnity obligations due as the result of breaches of the Fundamental Representations and the Excluded Representations. That restriction is found in Section 8.04(c), that states, in relevant part:
>
> > Notwithstanding **Section 8.04(a)**…, (i) the limitations set forth in **Section 8.04(a)([i])** … shall not apply to losses based upon, arising out of, with respect to or by reason of any inaccuracy in or breach of any representation o[r]

- 12 -

> warranty in the Fundamental Representations [and] the Excluded Representations…[.]
>
> ***
>
> The argument advanced by [PKA] is directly at odds with the notion that the parties could, and did, restrict the application of [Section] 8.04['s offset] in some instances, but failed to do so with respect to indemnification obligations arising out of breaches of the Article V covenant provisions.

*Id.* at 12 (emphasis added).[6]

We agree with Appellee's analysis.  Accordingly, the trial court did not err in determining that the $50,000 offset set forth in the Merger Agreement applied to reduce PKA's award.

**Issue 2**

In PKA's second issue, PKA claims that the trial court "did not apply the language of the [Merger] Agreement, which gives PKA a contractual right to recover fees[.]"  PKA's Brief at 35.  It argues that:

> Under [Section 8.02], the [s]elling [s]hareholders are required to indemnify PKA for any "Losses" resulting from breaches, and "Losses" is in turn defined in the Merger Agreement in a very expansive manner:

_____

[6] PKA argues that Section 8.04 does not create an exception for a breach of a covenant because "Section 8.04 is only dealing with exceptions to the application of the [offset] to certain *breaches of representations*, and does not purport to alter the manner of addressing breaches of covenants.  That is handled in Section 8.02(b)…."  PKA's Reply Brief at 2 (emphasis in original). We are unpersuaded by this argument.  Even though Section 8.04 only deals with exceptions to the application of the offset to certain breaches of representations, we agree with Appellee that the parties could have included language in the Merger Agreement restricting the application of Section 8.04's offset where breaches outside of Section 8.02(a) also occurred, but the parties did not do so.

> "Losses" means losses, damages, interest, awards, penalties, fines, costs or expenses of whatever kind, ***including reasonable attorneys' fees and the cost of enforcing any right to indemnification hereunder....***
>
> There is no question involved here of the reasonableness of the rates, time expended or skill of the attorneys employed by PKA to represent it in these proceedings — the [s]elling [s]hareholders have stipulated that the fees are a) supported by invoices which were authentic and admissible; b) the rates charged were consistent with the rates in the community for other lawyers with equivalent skill and experience; and c) the time spent was consistent with the difficulty of the issues and the complexity of the matter. All of PKA's efforts in this case — the trial, post-trial motions, the appeal, briefing on remand, and this appeal itself — were taken for the enforcement of its right under the Merger Agreement for indemnification resulting from breaches of the Merger Agreement by the [s]elling [s]hareholders. This is not in dispute. Thus, by contract, any cost or expense involved in enforcing the right to indemnity is recoverable.

*Id.* at 36-37 (internal citations omitted; emphasis in original).

Again, we reject PKA's argument. While the Merger Agreement allows PKA to recover reasonable attorneys' fees and the cost of enforcing any right to indemnification, **see** Merger Agreement at 9, it does not permit PKA to recover all of its fees and costs merely because it makes a claim for indemnification. Rather, it must show that the requested fees are reasonable, and it must be enforcing a right to indemnification, which contemplates that indemnification is due — *i.e.*, a right to indemnification exists — in the first place. **See** Issue 3, **infra** (discussing, among other things, how to evaluate whether the fees requested are reasonable under Delaware law); **see also** Appellee's Brief at 15 (arguing that the appellate attorneys' fees and fees on remand "were incurred [by PKA] in connection with attempting to enforce

rights that [PKA] did not have"). Accordingly, we disagree with PKA's claim that the trial court failed to apply the language of the Merger Agreement and that all of its fees and costs are contractually recoverable. Thus, no relief is due on this basis.

## Issue 3

In PKA's third issue, it advances that, "[p]utting aside the contractual language, under Delaware law, PKA's attorneys' fees for the appeal should have been granted." PKA's Brief at 37 (emphasis and unnecessary capitalization omitted). Specifically, it claims that the trial court abused its discretion in looking only to the success of PKA with respect to the appeal, instead of to the success of PKA in the litigation as a whole. *Id.* at 20. In addition, even if the trial court only considered the success of the appeal, PKA insists that it *was* successful on appeal in both defending the earlier award of attorneys' fees and in obtaining a remand from this Court on the issue of the $50,000 offset. *Id.*

In reviewing an award of attorneys' fees, "we will not disturb a trial court's determinations absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." *Kessock v. Conestoga Title Insurance Co.*, 194 A.3d 1046, 1059 (Pa. Super. 2018) (citation omitted).[7]

_____

[7] Again, PKA asserts that Pennsylvania's standard and scope of review applies, and Appellee does not contend otherwise. *See* PKA's Brief at 2-4.

In awarding attorneys' fees, the Delaware Supreme Court has explained:

Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs. An exception to this rule is found in contract litigation that involves a fee shifting provision. In these cases, a trial judge may award the prevailing party all of the costs it incurred during litigation. Delaware law dictates that, in fee shifting cases, a judge determine[s] whether the fees requested are reasonable. To assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct, which, include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

***Mahani v. Edix Media Group, Inc.***, 935 A.2d 242, 245-46 (Del. 2007) (footnotes omitted).

Here, in considering whether PKA's request for appellate attorneys' fees was reasonable, the trial court noted that "the parties generally stipulated to

- 16 -

the reasonableness of the fee bills regarding time spent, the complexity of the issues, *etc*." RO at 5.[8] However, the parties did not agree on the factor relating to the 'results obtained,' and therefore, the trial court focused its analysis on that prong. **See id.** In evaluating the 'results obtained' by PKA, the trial court stated:

> PKA was not the "successful" party and did not prevail on appeal. When a plaintiff who has been successful below contemplates taking an appeal to claim an even larger recovery, there should be at least some calculation of risk as to the potential costs of taking that appeal; otherwise, the system rewards and encourages a go-for-broke mentality that piles on attorneys' fees to be paid by defendants without any discretion by the court. PKA is effectively seeking a ruling that it is entitled to bill for fees in perpetuity, win or lose, simply because it obtained some recovery at the trial level.

> …[T]he fact that the governing contract contains a fee shifting provision does not *obligate* the court to award appellate attorney[s'] fees, as such an award was in our discretion. This is notwithstanding that we *did* award trial and post-trial attorneys['] fees based on the successful recovery of PKA. PKA's attorneys have been awarded fees of $399,222.42 ($384,309.42 + $14,913) on a $36,000 recovery. Attorneys' fees are now eleven times (11x) the amount of the recovery.

> …PKA appears to be arguing for a partial award of attorneys' fees for successfully defending the cross-appeal. However, PKA was the first to appeal, and therefore it was not "defending" anything at the time it filed a [n]otice of [a]ppeal. Had PKA not appealed, there might not have been a cross-appeal. Further, it was within

---

[8] **See also** Appellee's Response to Motion to Add Fees and Interest to Verdict, 1/22/21, at ¶¶ 14-16 (representing that Appellee stipulates that PKA's counsel's invoices were authentic and admissible, the rates charged were consistent with the rates in the community for other lawyers with equivalent skill and experience, and the time spent was consistent with the difficulty of the issues and the complexity of the matter).

our sound discretion not to award attorneys' fees for defending the cross-appeal.

We had no basis to award a partial figure in any event, as PKA did not allocate the request for attorneys' fees between the appeal and cross-appeal. It would appear that the bulk of the parties' time and the appellate court's effort went into the appeal as opposed to the cross-appeal. PKA raised six issues in its concise statement but briefed only four to the Superior Court, compared to [Appellee] who raised five issues in [his] concise statement but briefed only three. The vast majority of the appellate court's 45-page opinion was devoted to PKA's appeal as opposed to [Appellee's] cross-appeal.

In summary, this [c]ourt was within its discretion on the matter of appellate attorneys' fees, both as to the first appeal and the cross-appeal, and we exercised that discretion without arbitrariness.

RO at 5-7 (emphasis in original).

With respect to the trial court's reasoning, PKA complains that "each of the factors set forth in the Delaware test should be analyzed to give full context to the request for fees[,]" **see** PKA's Brief at 39, and it contends that the 'results obtained' factor is "the *least* important factor to consider in contractual fee-shifting cases such as this one." ***Id.*** at 40 (citing **Mahani**, 935 A.2d at 246 ("[T]he reasonableness of attorneys' fees and other expenses in a contractual fee shifting case should be assessed by reference to legal services purchased by those fees, not by reference to the degree of success achieved in the litigation[.]") (internal citations and quotation marks omitted) (emphasis in original)). Furthermore, PKA argues:

It is apparent that the [t]rial [c]ourt viewed the "results obtained" factor solely through the lens of the results of the appeal before the Superior Court. Because PKA did not prevail in its efforts to overturn the limited damages that had been awarded by the [t]rial [c]ourt, it was deemed on remand to have been an unsuccessful

appeal. But this is the wrong measuring stick, especially in light of the contractual language allowing for the recovery of attorneys' fees. The correct measure is PKA's success *in the litigation as a whole* — and when viewed from this holistic viewpoint, PKA was certainly successful "in enforcing its right to indemnification" — having received a liability finding, an award of damages, the earlier award of fees confirmed on appeal, and a remand to the [t]rial [c]ourt on the issue of the [offset].

Even if the correct view of "success" is to look only at the results of the appeal, however, the [t]rial [c]ourt still failed to correctly assess the results of the appeal. While it is certainly true that PKA was not successful in convincing this Court that the damage award was woefully inadequate, that was not the only issue on appeal. With respect to both of the other major issues addressed in that appeal, PKA *was* successful — this Court upheld a challenge by the [s]elling [s]hareholders to the earlier award of attorneys' fees, and this Court remanded the issue of the $50,000 [offset] to the [t]rial [c]ourt for further proceedings.

The [t]rial [j]udge did not hold that PKA's appeal, or its defense of the cross-appeal, was frivolous or unnecessary. Indeed, the appeal needed to be taken to correct the [offset] issue and to probe the issues surrounding the damages awarded. Certainly, PKA had to defend the assault on the earlier fee[] award. All of this was undertaken as part of "enforcing any right to indemnification" under the Merger Agreement. As such, all such costs and fees should be recoverable in full, and the [t]rial [c]ourt abused its discretion in failing to consider the overall success of PKA's litigation to award it the fees the parties contractually agreed were payable in pursuing indemnification. This result is particularly compelled should this Court hold, through this appeal, that the $50,000 [offset] does not apply to PKA's damages.

*Id.* at 41-43 (internal citations to reproduced record omitted; emphasis in original).

PKA has not convinced us that the trial court abused its discretion. Here, the trial court did consider the relevant factors, acknowledging that the parties agreed on certain ones, but disagreed about whether the results obtained by PKA on appeal should limit its recovery of appellate attorneys' fees. *See* RO

at 5. While PKA maintains that the 'results obtained' is the least important factor in the Delaware test, it nevertheless remains a factor for courts to consider, and the trial court was free to weigh it accordingly against the other factors.[9]

Moreover, with respect to PKA's argument that the trial court improperly considered the success of PKA's appeal, instead of its success in the litigation as a whole, we likewise discern no abuse of discretion. PKA proffers no specific authority or developed argument to support its claim that the trial court should **not** have focused on the success of the appeal in specifically awarding **appellate** attorneys' fees to PKA. **See In re S.T.S., Jr.**, 76 A.3d 24, 42 (Pa. Super. 2013) ("This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. … [M]ere issue spotting without analysis or legal citation to support an

_____

[9] **See Mahani**, 935 A.2d at 248 ("[The plaintiff's] award for the full amount of its attorneys' fees and other expenses cannot be considered unreasonable because the Chancellor properly weighed all the factors…. The Chancellor, we believe, correctly concluded that '[t]he amount involved in litigation and results obtained [were] only two of many factors to be considered,' and, indeed, he placed considerable weight on the time and labor necessary for [the plaintiff] to prepare the case for trial. The Chancellor found that [the defendant's] refusal to cooperate at every stage of the proceedings outweighed [the plaintiff's] limited trial success and heavily contributed to the total number of hours [the plaintiff] spent litigating the case.") (footnote omitted).

assertion precludes our appellate review of a matter.") (cleaned up).[10]   As such, no relief is due on this basis.

Finally, as to PKA's claim that the trial court failed to correctly assess the results of the appeal, we again ascertain no abuse of discretion.  PKA failed to overturn the $36,000 damages verdict, and its challenges to that verdict constituted the bulk of the prior appeal.  ***See Precision Kidd Acquisition, LLC v. Pass***, 241 A.3d 358 (Pa. Super. 2020) (unpublished, non-precedential memorandum).   Because it was unsuccessful on that primary issue, we conclude that the trial court did not abuse its discretion in determining that PKA did not prevail on appeal.  As such, we do not disturb the trial court's determination that PKA should not receive appellate attorneys' fees.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2022

---

[10] By not specifically considering the success of the appeal, the trial court pointed out that PKA would have "a blank check — win or lose — to earn additional attorneys' fees by taking an appeal, basing entitlement simply on the fact that [it] prevailed below and earned attorneys' fees for trial[-]level work."  TCO at 7.  We would agree with the trial court that this result seems undesirable.

- 21 -